**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
(~~Orlando~~ Division)
~~TAMPA~~

ELLAMAY ARTIS,
937 Bloomingdale Drive
Davenport, Florida 33897,

                    Plaintiff,

v.

DENIS R. McDONOUGH, Secretary,
U.S. Department of Veterans Affairs
810 Vermont Avenue, N.W.
Washington, D.C. 20420,

SERVE:
Denis R. McDonough, Secretary,
U.S. Department of Veterans Affairs
810 Vermont Avenue, N.W.
Washington, D.C. 20420,

                    Defendant.

Civil Action No. 8:22-cv-123-CEH-AAS

**JURY TRIAL DEMANDED**

**CIVIL COMPLAINT**

   **NOW COMES** Plaintiff, Ellamay Artis, Pro Se, and, pursuant to Fed. R. Civ. P. 8 and 10,

file this Civil Complaint for damages set forth as follows:

**JURISDICTION AND VENUE**

1.   This action is instituted pursuant to §§703 and 704 of the Civil Rights Act of 1963 ("Title

     VII"), 42 U.S.C. §§2000e-2 and 2000e-3. As this Complaint asserts claims arising under

     the laws of the United States, this Court has original jurisdiction over those claims. 28

     U.S.C. §1331.

2.   The actions giving rise to the claims described in this Complaint occurred within this

     judicial district and venue properly lies in this judicial district. 28 U.S.C. 1391(b)(1) and

1

(2).

## PARTIES

3. Plaintiff Ellamay Artis is an African American female citizen of the United States and a resident of the State of Florida.

4. Plaintiff is an "employee" within the meaning of §701(f) of the Civil Rights Act of 1964. 42 U.S.C §2000(f).

5. Defendant Denis R. McDonough is the Secretary of the United States Department of Veterans Affairs ("VA" or "Agency") and is the designated representative of the Agency.

## ADMINISTRATIVE PROCEDURES

6. Plaintiff Artis filed two timely administrative charges with the Agency, Case No. VA-2001-0675-2020103672, based on a formal complaint, alleging race discrimination, unlawful harassment and retaliation, filed on May 8, 2020  and Case No. VA-2001-0675-2020106654, based on a formal complaint alleging unlawful harassment and retaliation, filed on October 19, 2020.  Following the Agency's closure of its investigations into those complaints, Plaintiff Artis appealed the Agency's decision to the Equal Employment Opportunity Commission ("EEOC") and her appeal was assigned Case No. 2021003003. On October 19, 2021, the EEOC's Office of Federal Operations ("OFO") issued its Initial Decision closing Case No. 2021003003.  This Complaint is being filed within ninety (90) days of the Initial Decision and is being timely filed pursuant to §717(c) of Title VII, 42 U.S.C §2000e-16(c).  Plaintiff Artis has exhausted administratively her claims before the Agency and the EEOC, conferring jurisdiction on this Court to hear her claims.

## FACTS SPECIFIC TO PLAINTIFF ARTIS

7. Beginning in September 2017, Plaintiff Artis served as a Veterans Outreach Program Specialist ("VOPS"), through March 2018. During her tenure at the Orlando VA, Plaintiff Artis was promoted from a GS-7 grade level to a GS-11 grade level. She always was at least a Fully Successful performer. In her March 11, 2019 performance appraisal, Plaintiff Artis was rated as a Fully Successful performer. For the performance period October 1, 2017 through August 3, 2018, Plaintiff Artis also was rated as a Fully Successful performer.

8. As a VOPS, Plaintiff Artis served as the Outreach/MVP Coordinator, VHA. One of her primary job responsibilities was minority outreach. Among her responsibilities was extensive outreach to underserved segments of the veterans' population, including African American, Hispanic, Hawaiian, Native American and female veterans.

9. From 2017 to March 11, 2019, Plaintiff Artis was supervised by Veterans Experience Officer ("VEO"), Charles Tubbs (African American). Mr. Tubbs' management style was to allow Plaintiff Artis considerable flexibility in performing her VOPS duties since he trusted Plaintiff Artis' experience and judgment.

10. As the Outreach Coordinator, Plaintiff Artis routinely arranged and presented various outreach events. Under Tubbs' supervision, Plaintiff Artis routinely was given flexibility and autonomy in purchasing materials, event planning, including selecting guest speakers, and making financial commitments for the Agency. Plaintiff Artis regularly used her authorized Purchase Card to obtain materials. Mr. Tubbs did not require Plaintiff Artis to obtain purchase orders. He repeatedly informed Plaintiff Artis that he did not need to know the details, and that he expected her to just get the job done.

11. Plaintiff Artis regularly provided Mr. Tubbs and other managers with monthly Outreach Executive Summaries which reported her activities, events and goals. Plaintiff Artis also provided Mr. Tubbs and her other managers with a monthly outreach report and regularly met with them to discuss upcoming events. Plaintiff Artis also provided a monthly Minority Veteran Report to the Director of the Orlando VA Medical Center.

12. After Mr. Tubbs' exit, Plaintiff Artis experienced a revolving door of managers. Upon Mr. Tubbs departure, Plaintiff Artis was supervised for several months (April – August 13, 2019) by Ms. Aveni Patel (Asian). On August 13, 2019, Ms. Patel was replaced by Ms. Amber Tierney (Caucasian), Acting Veteran's Experience Officer ("AVEO").

13. In Spring 2019, Plaintiff Artis began vociferously opposing racially-based workplace discrimination and harassment. In May 2019, Plaintiff Artis repeatedly informed her then-supervisor, Ms. Patel, about racially harassing e-mails that she was receiving from the Voluntary Service manager, Ms. Adelina Sowell (Hispanic), and her assistant, Ms. Christine Mercado (Hispanic). On May 5, 6 and 8, 2019, Plaintiff Artis notified Ms. Patel of Sowell's and Mercado's harassing conduct and that she believed that such harassment was race-based. Ms. Patel ignored Plaintiff Artis' opposition to Ms. Sowell's and Ms. Mercado's unlawful actions.

14. When Ms. Patel declined to take action to address the discrimination and harassment, on May 13, 2019, Plaintiff Artis contacted Mr. Andrew Gonzalez, the EEO officer, about the harassment and discrimination by Patel, Sowell and Mercado. That day, Plaintiff Artis also contacted Dr. Lisa L. Zacher, the Acting Director, Orlando VA Medical Center, VHA, to report the harassment and discrimination that she was experiencing.

15. On May 30, 2019, Plaintiff Artis notified Dr. Timothy Liezert of the Orlando VA Medical Center about the harassment that she was experiencing from Ms. Sowell and Ms. Mercado, as well as Ms. Patel's indifference to her complaints.

16. No effective remedial action was taken by Drs. Liezert and Zacher.

17. Alarmed by the Agency's indifference to her discrimination and harassment complaints, Plaintiff Artis contacted the Agency's Office of Resolution Management ("ORM") in May 2019. Plaintiff Artis was rebuffed by ORM representatives, who told her that there was no adverse action that could warrant filing and prosecuting a discrimination complaint.

18. The Agency responded draconically to Plaintiff Artis' EEO complaints On June 5, 2019, Ms. Patel told Plaintiff Artis that she was being suspended from conducting outreach events, comprising a substantial portion of her duties as Outreach Coordinator. Also that day, Plaintiff Artis was notified that she was required to attend an investigatory interview the next day, June 6, 2019, before an Administrative Investigation Board ("AIB") charged with investigating incidents involving "questions about accountability and management of funds, purchase card usage, time and leave policies and conflict of interest."

19. The AIB heard testimony on June 6 and 8, 2019. Plaintiff Artis was denied elementary due process at that meeting. She (1) was not informed of the charges against her; (2) was not given a chance to have counsel present; and (3) was denied the opportunity to confront witness against her. Although Plaintiff Artis' union representative, Ed Johnson (African American), was present to assist her, he was silenced by the AIB chair and was refused permission to speak or to advise Plaintiff Artis.

20. Plaintiff Artis testified truthfully before the AIB on June 6, 2019 and presented evidence refuting the charges that were leveled against her. During that interrogation, Plaintiff Artis

5

testified that, following a Tea Party event for women veterans and after her supervisor, Ms. Patel, had expressed concerns about a potential conflict of interest, she had sought a review by the Agency's Office of General Counsel.  Plaintiff Artis accurately testified that the General Counsel's office told her that there was no conflict of interest.  Plaintiff Artis attempted to present e-mails between James Kelly, the Agency's Deputy Chief Counsel/Deputy Agency Ethics Official and Plaintiff Artis, which confirmed that she had not committed any ethics violation. Ms. Patel refused to provide that crucial evidence to the AIB.    Plaintiff Artis attempted to testify about the discrimination, retaliation, harassment and hostility that she was experiencing, but was told that the AIB does not handle harassment or retaliation.

21. The AIB never issued any findings.  Nor did it issue an executive summary of its findings.

22. On June 8, 2019, after testifying before the AIB,  Plaintiff Artis met with the Orlando VA's Associate Director, Cory Price (Caucasian) about her discrimination and harassment complaints. Plaintiff Artis' union representative, Mr. Johnson, also was present.  Mr. Price told Plaintiff Artis that he wanted all Minority events, including Minority Town Halls, stopped immediately, because "I said so."   Rather than address Plaintiff Artis' discrimination and harassment complaints, Mr. Price brusquely told Plaintiff Artis that her concerns would be addressed after the resolution of the AIB matter.

23. On June 27, 2019, after the AIB interrogation, Plaintiff Artis again met with an ORM representative and filed an informal complaint of discrimination.  She filed a formal complaint of discrimination on July 17, 2019.

24.  After she filed her administrative EEO complaint, Plaintiff Artis' supervisors continued retaliating against Plaintiff Artis by denying, on July 9 and August 16, 2019, her requests

for compensatory time accrued from approved events to go to scheduled appointments. This was contrary to the practices that previously had been followed concerning the use of compensatory time off. Further, Plaintiff Artis continued to be banned from holding or attending veterans outreach events.

25. Plaintiff Artis' EEO complaint was assigned to Plaintiff Davis (African American female) for investigation and fact-finding. At that time, Plaintiff Davis was the Primary Care Section Chief, Lake Baldwin VA Outpatient Clinic.

26. A fact-finding conference was held on July 26, 2019 with Plaintiff Davis, Mr. Colon (Human Resources representative), Mr. Johnson (Plaintiff Artis' union representative). Plaintiff Artis responded to several of Plaintiff Davis' requests for information.

27. On September 10, 2019, after conducting multiple interviews, Plaintiff Davis, an impartial, objective investigator, concluded that Plaintiff Artis had suffered unlawful discrimination, retaliation and harassment. Her findings were rejected by Orlando VA leadership after Dr. Davis refused to alter her findings, which were well-supported by her thorough investigation. Plaintiff Artis' EEO complaint was removed from Dr. Davis and reassigned to two other–investigators, who, contrary to the investigative record, reached a result consistent with Orlando VA managers' objectives. That investigation was not completed until late 2019.

28. In early November 2019, Plaintiff Artis learned that the investigation into her EEO complaint that had been completed and found meritorious by Plaintiff Davis was being reopened with a "new" investigation to begin the week of November 12, 2019.

29. On November 7, 2019, Plaintiff Artis sent an e-mail to Mr. James Leafgreen, and questioned whether it was "normal" in a harassment investigation for an investigation to

be reopened with a new investigator re-interviewing the harassers and for a human resources representative to be present during Plaintiff Artis' re-interview. Mr. Leafgreen never responded to that inquiry.

30. On November 8, 2019, Mr. Gonzalez e-mailed Plaintiff Artis to inform her that "[t]he findings of the previous investigation [conducted by Plaintiff Davis] were not supported by the evidence compiled, therefore a new investigation has been ordered and **will be completed by a party outside the Orlando VA Healthcare System beginning the week of October 12, 2019.**" (emphasis in original). That e-mail was corrected later that day to reflect that the re-investigation would be conducted beginning the week of November 12, 2019.

31. Prior to September 16, 2019, Plaintiff Artis enjoyed a pristine disciplinary record, never previously having been disciplined, formally or informally. On September 26, 2019, Plaintiff Artis was issued a Notice of Proposed Removal, issued by a new supervisor, Amber Tierney. Tierney had supervised Plaintiff Artis for about a month. Because that NOPR was rife with factual errors, and failed to establish that Plaintiff Artis had engaged in misconduct warranting it removal, it should have been rejected.

32. On September 26, 2019, Plaintiff Artis filed her Response to the NOPR.

33. On October 2, 2019, five days after Plaintiff Artis submitted her Response, while her EEO Complaint was pending, the Agency issued its Decision on Removal Proposed Under the Authority of 38 U.S.C. 714 ("Removal Decision"). Dr. Zacher, who had ignored Plaintiff Artis' May 2019 expressed concerns about discrimination and retaliation, was the deciding official. Dr. Zacher simply ignored the compelling evidence that Plaintiff Artis had submitted in opposing the NOPR.

8

34. Because Plaintiff Artis, in October 2019, had pending a whistleblower complaint with the VA Office of the Inspector General, implementation of the removal decision was delayed, pending resolution of that complaint.

35. The harassment and retaliation against Plaintiff Artis continued unabated. In October 2019, Plaintiff Artis was informed that the Agency was preparing a performance appraisal for the period subsequent to her supervision by Mr. Tubbs. Plaintiff Artis was informed that the performance appraisal was to be conducted by Ms. Patel, who only had supervised Plaintiff Artis for several months during that period. Ms. Patel, who also was the supervisor that had condoned the harassing conduct by Sowell and Mercado, had falsely accused Plaintiff Artis of violating Agency policies and had ignored Plaintiff Artis' complaints of harassment, discrimination and retaliation. She was identified as one of the discriminators, retaliators and harassers in Plaintiff Artis' July 2019 EEO complaint that was still being investigated by the Agency. Ms. Patel had not supervised Plaintiff Artis since early August 2019. She had supervised Plaintiff Artis for barely three months (April 29 – August 13, 2019).

36. On April 20, 2020, while reviewing her personnel file, Plaintiff Artis learned that Amber Tierney had placed in that file, without notification to Plaintiff Artis, a performance appraisal, effective September 30, 2019. Contrary to Agency policies and practices, Plaintiff Artis had not received notification of that performance appraisal and it never had been discussed with her. Even though Plaintiff Artis had elected, in her personnel file, to be notified of any additions to her personnel file, she received no such notification. That performance appraisal falsely stated that Plaintiff Artis "declined to sign." That performance appraisal rated Plaintiff Artis' performance as "Unacceptable." Although the

performance appraisal was signed by Ms. Tierney, it was conducted by Ms. Patel, who supervised Plaintiff Artis only briefly (April 29 – August 13, 2019).

37. The abusive and threatening workplace that Plaintiff Artis experienced from May 2019, through August 2020 was intimidating, hostile and offensive. It directly affected Plaintiff Artis' ability to perform her job. Plaintiff Artis' mental and physical health deteriorated greatly. She lived in a state of perpetual fear and it was clear to Plaintiff Artis that her managers were indifferent to or condoned the discrimination and retaliation that she was experiencing. Plaintiff Artis reasonably believed that the Agency's professed "mission" to provide a non-discriminatory and non-retaliatory workplace was a farce.

38. On August 17, 2020, effective September 18, 2020, Plaintiff Artis, based upon the deterioration in her physical and mental health and, on the advice of her medical providers, involuntarily resigned her employment with the Agency.

39. Defendant's actions in suspending Plaintiff Artis' outreach responsibilities, subjecting Plaintiff Artis to the AIB, ignoring her EEO complaints, reversing the fact-finding report of Plaintiff Davis, issuing the September 2019 performance appraisal without notification and discussion with Plaintiff Artis, and removing Plaintiff Artis from federal service were adverse actions that individually and cumulatively affected Plaintiff Artis' wages, hours and terms and conditions of her employment. Those adverse actions taken against Plaintiff Artis were effected contrary to Defendant's policies, procedures, guidelines, regulations and practices.

40. Plaintiff Artis' co-workers, not in her protected classifications and that had not engaged in protected activities, including, were not subjected to the adverse actions described in ¶39,

above. Plaintiff Artis was treated disparately compared to other similarly-situated co-workers.

41. The adverse actions described in ¶39, above, were materially adverse actions and were actions that would dissuade a reasonable worker from opposing unlawful employment practices or participating in EEOC proceedings.

42. As a result of the above-stated actions, Plaintiff Artis has suffered economic damages, including, but not limited to, lost wages and benefits, severe emotional distress, humiliation and embarrassment, medical expenses, attorney's fees and the costs associated with this lawsuit.

## COUNT I

## PLAINTIFF ARTIS-RACE DISCRIMINATION IN VIOLATION OF §703 OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

43. Plaintiff Artis repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶1 through 42 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

44. Plaintiff is an African American female.

45. From May 2019 through August 17, 2020, Defendant took adverse actions against Plaintiff Artis including, but not limited to, suspending Plaintiff Artis' outreach responsibilities, subjecting Plaintiff Artis to the AIB, ignoring her EEO complaints, reversing the fact-finding report of Plaintiff Davis, issuing the September 2019 performance appraisal without notification and discussion with Plaintiff Artis, and removing Plaintiff Artis from federal service were adverse actions that individually and cumulatively affected Plaintiff Artis' wages, hours and terms and conditions of

her employment. Those adverse actions taken against Plaintiff Artis were effected contrary to Defendant's policies, procedures, guidelines, regulations and practices.

46. Plaintiff Artis has suffered the unlawful adverse actions described in ¶45 above.

47. Plaintiff Artis race was the determining factor in the adverse actions described above.

48. The explanations offered by Defendant for its adverse actions taken against Plaintiff Artis are pretextual.

49. Defendant's actions were unlawful and in violation of §703(a) of Title VII, 42 U.S.C. §2000e-2(a).

50. As a result of the above-stated actions, Plaintiff Artis has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT II

## PLAINTIFF ARTIS-UNLAWFUL RETALIATION IN VIOLATION OF § 704 OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

51. Plaintiff Artis repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶1 through 50 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

52. From May 2019 to August 17, 2020, Plaintiff Artis opposed unlawful employment practices and participated in EEO activities, including, but not limited to, opposing racially harassing e-mails from Ms. Sowell and Ms. Mercado, contacting an ORM representative about the racially harassing e-mails, Orlando VA's managers

12

condoning of such actions during her appearance before the AIB, and filing multiple complaints of discrimination with the ORM and participating in the investigation of those administrative complaints.

53.     After Plaintiff Artis engaged in protected activities protected by Title VII, Defendant took myriad materially adverse actions against Plaintiff Artis that would have dissuaded reasonable workers from engaging in protected activities.  Those activities have included, but are not limited to, denying Plaintiff Artis the full benefits and privileges of employment accorded Plaintiff Artis' co-workers and that have not opposed unlawful employment practices or participated in EEO activities, including, but not limited to, haling Plaintiff Artis before an AIB in which she was denied elemental due process rights, rejecting Plaintiff Davis' fact-finding regarding her ORM complaints, authorizing a sham investigation into Plaintiff Artis' ORM complaint where the "results" were pre-determined, gutting Plaintiff Artis' job responsibilities by removing Plaintiff Artis' outreach duties, and removing Plaintiff from federal service.

54.     Beginning in Summer 2019, Plaintiff Artis filed multiple ORM complaints and participated in subsequent EEOC proceedings before the EEOC's Office of Federal Operations.

55.      Plaintiff Artis' engaging in activities protected under Title VII was a motivating factor in the materially adverse actions taken against Plaintiff Artis.

56.     There is a causal connection between Plaintiff Artis' protected activities under Title VII and the materially adverse actions taken against her.

57.     The reasons articulated by Defendant for the materially adverse actions taken

against Plaintiff Artis are pretextual and, but-for Plaintiff Artis' having engaged in protected activities, they would not have been taken.

58. Defendant unlawfully retaliated against Plaintiff Artis in violation of §704(a) of Title VII, 42 U.S.C. §2000e-3(a).

59. As a result of the above-stated actions, Plaintiff Artis has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT III

## PLAINTIFF ARTIS-UNLAWFUL HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

60. Plaintiff Artis repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶1 through 59 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

61. After Plaintiff Artis engaged in protected activities, beginning in May 2019 and continuing to August 2020, Orlando VA managers, including, but not limited to, Aveni Patel, Amber Patel, Dr. Lisa Zacher, Dr. Timothy Liezert and Dr. Timothy Cooke began and continued unabated a pattern of unwelcome harassment, intimidation and ridicule directed at Plaintiff Artis because of her race, and for Plaintiff Artis' having engaged in protected activities under Title VII, including, but not limited to subjecting her to repeated racially-harassing communications, interrogating her before the AIB, ignoring her complaints of discrimination made to Cory Price, intimidating her after she initiated EEO activities, intimidating

Plaintiff Davis during her fact-finding regarding Plaintiff Artis' ORM complaint, repudiating the fact-finding conducted by Plaintiff Davis, authorizing a sham investigation designed to yield pre-determined results, and removing Plaintiff Artis from federal service.

62. Such harassment, intimidation and ridicule created a workplace that was permeated with discriminatory and retaliatory intimidation, ridicule and insult that was sufficiently severe and pervasive to alter Plaintiff Artis' conditions of employment, creating an abusive retaliatory working environment.

63. Defendant's managers' discriminatory and retaliatory conduct unreasonably interfered with Plaintiff Artis' work performance. Their actions were both objectively and subjectively offensive, such that a reasonable person, as well as Plaintiff Artis, would perceive them to be so.

64. Defendant's actions affected the terms, conditions and privileges of Plaintiff Artis' employment.

65. Defendant knew or should have known of its managers' actions and failed to act to prevent or remediate their unlawful retaliatory harassment.

66. As a result of the above-stated actions, Plaintiff Artis has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## COUNT IV

## PLAINTIFF ARTIS-CONSTRUCTIVE DISCHARGE

67.     Plaintiff Artis repeats, re-alleges and incorporates by reference each and every factual allegation contained in ¶¶1 through 66 of this Complaint as though they are fully set forth herein, and makes them part hereof and, furthermore, states as follows:

68.     Defendant's abusive and endemic discriminatory and retaliatory conduct and harassment continued unabated and unremediated from May 2019 through August 17, 2020.  Such conduct directly and catastrophically adversely affected Plaintiff Artis' health and her ability to perform her job.

70.     By August 2020, Plaintiff no longer could tolerate the abusive discriminatory, retaliatory and harassing conduct and the abusive workplace at the Orlando VA.

71.     Plaintiff Artis' medical providers recommended that leaving abusive and unlawful workplace at the Orlando VA was necessary for her health.

72.     On August 17, 2020, Plaintiff Artis tendered her resignation. That decision was not voluntary.  The discriminatory and retaliatory conduct and harassment suffered by Plaintiff Artis was so intolerable that a reasonable person would have been compelled to resign.  Further, since the Orlando VA already had reached a determination to remove Plaintiff Artis from federal service and merely was awaiting the resolution of Plaintiff Artis' whistleblower complaint to effect that action, Plaintiff Artis' resignation was not a voluntary action.

73.    Defendant intentionally and unlawfully discriminated and retaliated against Plaintiff Artis and intentionally and unlawfully interposed a hostile and offensive work environment against Plaintiff.

74.    Defendant deliberately made Plaintiff Artis' working conditions intolerable.

75.    Plaintiff Artis was constructively discharged from her position with the Agency.

76.    As a result of the above-stated actions, Plaintiff Artis has suffered economic and non-economic damages, including, but not limited to, lost wages and benefits, loss of prestige, severe emotional distress, medical expenses, attorney's fees and costs related to this litigation.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Honorable Court grant her the following relief, namely:

(i)  That this Court determines that the employment practices complained of in this Complaint are unlawful in that they violate §§703 and 704 of the Civil Rights Act of 1964,  42 U.S.C. §§2000e-2 and 2000e-3;

(ii) That Defendant pays the Plaintiff in this action a sum in excess of $300,000 for her compensatory and punitive damages;

(iii) That Defendant pays Plaintiff's costs and expenses and reasonable attorney's fees as provided under federal laws in connection with this action;

(iv)  That this Court grants other and such further relief to the Plaintiff as it deems just and proper.

DATED:  JANUARY 14, 2022.

Respectfully submitted,

_____
Ellamay Artis, Pro Se Plaintiff
937 Bloomingdale Drive
Davenport, Florida 33897
517-862-1434

18